Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Robert Ahdoot (SBN 172098)
*rahdoot@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310-474-9111
Facsimile:   310-474-8585

*Counsel for Plaintiff and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, minor, by and through their guardian, VERONIKA PIKEEVA, individually and on behalf of all other similarly situated individuals, | Case No.: 25-cv-8518 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| DISNEY WORLDWIDE SERVICES, INC., a corporation; DISNEY ENTERTAINMENT OPERATIONS LLC, a limited liability company, | |
| Defendants. | |

Minor Plaintiff Jane Doe ("Minor Plaintiff" or "Plaintiff"), by and through their guardian and their undersigned counsel, hereby allege as follows against Defendants Disney Worldwide Services, Inc., and Disney Entertainment Operations, LLC (collectively, "Disney" or "Defendants"):

## INTRODUCTION

1.     Plaintiff brings this class action individually and on behalf of all other individuals who had their privacy invaded by Disney's intrusive and unlawful business practices of enabling the collection of personal information from millions of children under the age of 13 in the United States without providing notice to parents or obtaining verifiable parental consent.

2.     Disney is a worldwide media conglomerate that produces and distributes highly popular child-directed content, including through its official channels on YouTube, a video-sharing platform owned by Google, LLC.

3.     Since 2020, Disney has failed to mark its animated videos, cartoons, movie clips, and other content clearly aimed at children under 13 as "made for kids" on YouTube. Disney's intentional omission of the designation has allowed the collection of personal data from children, including persistent identifiers (like cookies and device IDs) and sensitive information (such as identity and location), all without notifying parents or securing verifiable parental consent.

4.     Disney thereby generates substantial advertising revenue from opening up its audience of millions of children under the age of 13 to YouTube's targeted advertising algorithm at the expense of their privacy and in direct contravention of state and federal law.

5.     Disney's conduct constitutes an invasion of the right to privacy for millions of children in the United States. Minor Plaintiff bring claims on behalf of themselves and all other similarly situated children under the age of 13 injured by Disney's grossly deceptive conduct.

**JURISDICTION AND VENUE**

6.    This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 as well as pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class members, the action is a class action in which one or more Class members are citizens of states different from Defendants.

7.    The Court has personal jurisdiction over Defendants who conduct significant business in this District, thus availing themselves of California's markets by providing their products and services therein; they has sufficient minimum contacts with California; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District.

8.    Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b)(2) because Defendants conduct their affairs in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

9.    Minor Plaintiff is an American citizen and resident of Pennsylvania. On various dates between 2020 and the present, Plaintiff watched child-directed content uploaded by Disney on the YouTube platform.

10.    Upon information and belief, Minor Plaintiff viewed videos that Disney did not designate as "made for kids." As a result, Minor Plaintiff's data was collected and exploited for targeted behavioral advertising. Minor Plaintiff's guardian was never notified that Disney had enabled the collection of her children's personal information for the purpose of targeted behavioral advertising. Minor Plaintiff's guardian never provided consent of any kind for her children's information to be collected and used for targeted behavioral advertising on the YouTube platform. Minor Plaintiff's guardian places significant value in her children's privacy and would not have consented to the collection of her children's data on Disney channels. Minor Plaintiff's guardian would not have

CLASS ACTION COMPLAINT

permitted her children to access YouTube had he known that Disney was not abiding with internet laws designed to protect children.

11.    Defendant Disney Worldwide Services, Inc. ("Disney Worldwide") is a Florida corporation with its principal place of business at 1375 Buena Vista Drive, Lake Buena Vista, Florida 32830. Disney Worldwide is a wholly owned subsidiary of the Walt Disney Company and serves as a central business and administrative services provider for Disney's various media and entertainment subsidiaries.

12.    Defendant Disney Entertainment Operations, LLC ("Disney Entertainment") is a Florida limited liability company, with its principal place of business at 500 Buena Vista Street, Burbank, California 91521. Disney Entertainment is primarily responsible for the creation, distribution, and monetization of Disney's entertainment content, including video programming made available on platforms such as YouTube.

13.    Disney Worldwide and Disney Entertainment are agents and instrumentalities of the Walt Disney Company and operate under its direction and control.

## COMMON FACTUAL ALLEGATIONS

### I.    Disney's Business Model

14.    The Walt Disney Company is one of the largest and most influential media and entertainment conglomerates in the world. The Walt Disney Company operates through numerous subsidiaries (including Defendants) and divisions engaged in film and television production, streaming services, theme parks, consumer products, and digital media.

15.    Disney has built its empire by aggressively targeting children as a primary audience and commercial demographic. Through its vast portfolio of globally recognized characters, franchises, and branded content – including Disney Princesses, Pixar, Marvel, and Star Wars – Disney markets itself as a trusted source of family entertainment while simultaneously leveraging its content to cultivate brand loyalty from a young age.

16.    Disney's business model is heavily dependent on capturing and monetizing the attention of children across multiple platforms, including television, streaming,

CLASS ACTION COMPLAINT

merchandise, theme parks, and digital media. Central to this strategy is the use of engaging, child-directed content designed to attract and retain young viewers – often without meaningful parental oversight – allowing Disney to generate billions in revenue annually through advertising, licensing, and data-driven marketing.

17.    Despite its wholistic public image, Disney operates with the precision of a data-driven advertising enterprise, consistently prioritizing profit over children's privacy and well-being.

**II.    Disney's Content on YouTube**

18.    YouTube LLC operates YouTube, an online video-sharing platform. YouTube allows its visitors and/or users to view user-generated content that has been uploaded by registered YouTube users on YouTube.

19.    YouTube videos are viewable by anyone who accesses YouTube by visiting www.youtube.com or using the YouTube mobile or streaming device app. Individuals do not have to be registered with or signed into YouTube, to view YouTube videos.

20.    YouTube requires that videos intended to be available to the public be uploaded through a channel.

21.    Each channel has a unique account and serves as a centralized page where all of a particular content creator's videos, playlists, branding, and audience engagement tools are hosted. Content creators such as Disney have full control over the videos they upload to their channels, including the ability to set titles, thumbnails, descriptions, age designations, and monetization preferences.

22.    Users may find videos on YouTube by navigating to a particular channel's homepage, or users may come across videos uploaded to a particular channel without interacting directly with that channel.

23.    Disney maintains a direct and lucrative commercial relationship with YouTube. Disney operates many official YouTube channels, including but not limited to: Disney Channel, Disney Junior, and various franchise-specific channels, through which it uploads, promotes, and monetizes video content.

CLASS ACTION COMPLAINT

24.     During the relevant period of 2020 through the present ("Class Period"), Disney has operated and uploaded tens of thousands of videos to more than 1,250 YouTube channels.

25.     Users are able to easily discover Disney content on YouTube through YouTube's search function, autoplay suggestions, and algorithmically-driven recommendations, which often promote similar or related content once a child begins viewing a Disney video. Young children frequently access this content directly – by searching for characters or titles they recognize – or indirectly through embedded videos in third-party websites, smart TVs, tablets, or the YouTube app.

26.     Disney's videos are extremely popular on YouTube. According to a complaint filed against Disney by the Federal Trade Commission ("FTC") on September 2, 2025, videos on just three dozen of Disney's channels resulted in tens of millions of hours watched worldwide and hundreds of millions of views in the United States in just three months of 2019. The amount of time viewers spent watching videos on these channels soared to over 100 million hours worldwide, with approximately 1.2 billion views in the United States alone, during three months of the early COVID-19 pandemic period of 2020.

27.     Indeed, in many households, Disney videos play continuously via autoplay, leading to extended viewing sessions often without direct parental supervision. These viewing patterns provide high engagement and view counts, generating substantial advertising revenue for Disney while also facilitating the collection of viewer data, including persistent identifiers, unless proper child-directed settings are applied.

III.    **Data Collection and Targeted Advertisements on YouTube**

28.     YouTube gathers personal information from users who visit the platform to show them targeted ads. This data includes details about a user's activity (e.g. search queries, videos watched, and interactions with both content and ads), location (e.g. GPS data, IP addresses, device sensor information, and nearby device data), and unique identifiers (e.g., cookies, advertising IDs, and device IDs). YouTube compiles this

CLASS ACTION COMPLAINT

information into a user profile, creating an up-to-date and detailed snapshot of each user's preferences and behaviors.

29.   YouTube uses these data profiles, and shares them with its partners, to deliver targeted advertisements based on the preferences inferred from their profiles.

30.   Advertising on YouTube can be targeted in two ways: behavioral or contextual. Behavioral targeting involves showing ads to users based on their personal data, which is tracked across various websites, apps, and devices. YouTube uses the collected data to power an algorithm that predicts which types of ads are most likely to be clicked by the user.

31.   Disney has been an active participant in YouTube's partner program, a monetization agreement where content creators like Disney receive a large share of the advertising revenue generated from their videos on the platform. This includes pre-roll, mid-roll, banner ads, and targeted display ads.

32.   Through the YouTube partner program, Disney earns revenue from advertisements placed on its videos by YouTube. Disney is considered a preferred content partner, a designation given to high-level advertisers and premium content creators. This status provides additional revenue opportunities and greater brand protection.

33.   YouTube enables Disney to profit from, and indirectly access, the personal data—especially behavioral data—collected from viewers, including children. Both YouTube and Disney prefer behavioral advertising because it is seen as more effective than contextual targeting. Advertisers are willing to pay more for behavioral ads, and YouTube, in turn, compensates Disney more for allowing this type of advertising on its content than it would for only displaying contextual ads. Therefore, both parties have a strong financial incentive to prioritize behavioral advertising.

34.   As a YouTube partner, Disney has access to the platform's content management, audience analytics, and monetization tools, including settings related to behavioral advertising and the option to specify whether content is intended for children under 13.

CLASS ACTION COMPLAINT

## IV.   The Children's Online Privacy Protection Act

35.     The Children's Online Privacy Protection Act ("COPPA") was enacted in 1998 by Congress to protect the safety and privacy of children online by prohibiting the unauthorized or unnecessary collection of children's personal information online by operators of Internet websites and online services. COPPA directed the Commission to promulgate a rule implementing COPPA. The Commission promulgated the COPPA Rule on November 3, 1999, under Section 1303(b) of COPPA, 15 U.S.C. § 6502(b), and Section 553 of the Administrative Procedure Act, 5 U.S.C. § 553. The Rule went into effect on April 21, 2000. The Commission promulgated revisions to the Rule that went into effect on July 1, 2013. Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Rule constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

36.     The COPPA Rule applies to any operator of a commercial website or online service directed to children that collects, uses, and/or discloses personal information from children, and to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personal information from children. The Rule requires an operator to meet specific requirements prior to collecting online, using, or disclosing personal information from children, including but not limited to:

    a. Providing clear, understandable, and complete notice of its information practices, including specific disclosures, directly to parents (Section 312.4(b) of the Rule, 16 C.F.R. § 312.4(b));

    b. Posting a prominent and clearly labeled link to an online notice of its information practices with regard to children, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures set forth in the Rule (Section 312.4(d) of the Rule, 16 C.F.R. § 312.4(d)); and

     c.   Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personal information from children (Section 312.5(a)(1) of the Rule, 16 C.F.R. § 312.5(a)(1)).

37. The law defines "personal information" broadly to include not only names and contact details but also persistent identifiers such as cookies, IP addresses, device IDs, and other tracking technologies used for behavioral advertising.

38. The FTC, which enforces COPPA, has made clear that COPAA applies not only to websites and apps that are directed to children, but also to general-audience platforms—like YouTube—when they have actual knowledge that child-directed content is being hosted.

39. COPAA reflects a strong public policy interest in shielding children from invasive data practices and commercial exploitation, and violations of the statute can result in significant civil penalties and injunctive relief.

## V. "Made for Kids" Designation for Contents on YouTube

41. In 2019, the Federal Trade Commission (FTC) took decisive action against YouTube and its parent company, Google LLC, for violating the Children's Online Privacy Protection Act (COPPA). FTC's complaint charged YouTube with knowingly collecting personal information from children under the age of 13— including information used for targeted behavioral advertising—without notifying parents or obtaining the required verifiable parental consent, as required by law. Furthermore, the complaint included specific allegations concerning YouTube and content creators' deceitful categorization of content  explicitly aimed at children as content for a general audience to increase revenue.

42. As part of the settlement, YouTube was forced to pay a then-record $170 million fine and overhaul its platform to comply with COPPA. Crucially, this included a mandate for content creators, including Disney, to specify whether their videos were "made for kids" during the upload process. This requirement was designed to help YouTube comply with the FTC's ruling and ensure that child-directed content was treated appropriately under COPPA regulations.

43.     The FTC's action made it abundantly clear that both YouTube and content creators share similar responsibilities under COPPA to protect children's privacy. This is particularly critical when monetizing content aimed at children through advertising and data collection.

44.     Upon information and belief, YouTube told its content creators that they must identify whether their content was "made for kids" to remain compliant with the FTC's requirements. YouTube uses this designation to determine what features and advertising options are available for each video to ensure compliance with COPPA. When a video is labeled as "made for kids," YouTube disables certain functionalities—like comments, autoplay on the homepage, and targeted ads. Features like saving to a playlist or watching later are also disabled, all to prevent the collection of data from children that would trigger the need for parental consent under COPPA.

45.     Further, when a video is marked as "made for kids," autoplay is restricted to other videos designated as "made for kids," preventing any videos not intended for children from being automatically played. If child-directed videos are not designated as "made for kids," they remain susceptible to targeted advertising using persistent identifiers, which violates COPPA's protections.

46.     Content creators, including Disney, were told that they could set audience controls at the channel level or video level. If the channel was labeled as "not made for kids," any new video uploaded to that channel would automatically be classified as "not made for kids." The content creator would then be required to manually adjust the designation to reflect the video's content.

47.     Failure to accurately designate content as either "made for kids" or "not made for kids" came with the threat of serious consequences, including potential legal action from the FTC or other regulators.

## VI.   Disney Failed to Appropriately Mark Child-Directed Videos

48.     Based on YouTube's compliance requirements in the aftermath of the FTC's 2019 COPPA enforcement action, Disney had the ability and the duty to designate its

videos as "made for kids."

49.    Disney has several channels on YouTube that target different age groups. Some of these channels are designated as "made for kids" while others are designated as "not made for kids." Upon information and belief, per corporate policy, Disney sets an audience designation  as either "made for kids" or "not made for kids" at the channel level and does not change the designation for individual videos uploaded to that channel.

49.    Under this channel level policy, when a video is uploaded to a channel Disney has designated as "not made for kids," Disney allows the video to remain at the default designation of "not made for kids," even if the video were child-directed.

50.    Despite producing and uploading vast amounts of content that is unmistakably directed at children under the age of 13, Disney knowingly fails to make these designations, enabling YouTube to collect personal information from child viewers and provide Disney with information that assists Disney with its targeted advertising in violation of COPPA.

51.    Upon information and belief, child-directed videos that Disney designated as "not made for kids" include videos available on the Pixar channel, the Disney Plus channel, the Walt Disney Studios channel, the Disney Animation Studios channel, the Disney Movies channel, the Disney on Ice channel, the Disney channel, the Oh MY Disney channel, the Disney on Broadway channel, and the Disney D23 channel.

52.    The videos on these channels are unmistakably directed toward children under the age of 13, as is evident from their content, presentation, and intended audience. These videos frequently feature animated characters like Mickey Mouse, Elsa, Moana, Lightning McQueen, and other iconic figures from Disney's catalog that are specifically marketed to and beloved by young children.

53.    These videos often include bright, colorful visuals, simple language, sing along songs, nursery rhymes, basic educational themes, and storylines designed to appeal to preschoolers and early elementary-age viewers. In many cases, the characters themselves address children directly or invite interaction, further reinforcing their child-directed nature.

54.     The cumulative effect of these elements – combined with Disney's own branding as a provider of family and children's entertainment—makes it objectively clear that these videos fall squarely within the definition of "child-directed" under COPAA and applicable FTC guidance.

55.     Disney's failure was not accidental or technical; it was a deliberate business decision that prioritized deliberate collaboration that prioritized advertising revenue over children's privacy rights. In fact, in June 2020, YouTube notified Disney of over 300 videos that were not appropriately marked "made for kids," despite child-directed subject matters featuring characters from The Incredibles, Coco, Toy Story, Tangled, and Frozen. Disney was notified that YouTube was reclassifying these videos as "made for kids," but Disney refused to revise its policy.

56.     Disney's failure was also not the result of ambiguity, but of calculated avoidance of regulatory compliance.

57.     On September 2, 2025, the FTC formally accused Disney of violating COPAA by failing to properly mark certain YouTube videos as "made for kids." According to the FTC, this mislabeling – including content from obvious child-directed videos—allowed the collection of personal data from children under 13 years old without verifiable parental notification or consent and enabled targeted advertising through YouTube that is prohibited under COPPA.

58.     FTC chairman Andrew Ferguson sharply criticized Disney's handling of child-directed content on YouTube, stating that the enforcement action "penalizes Disney's abuse of parents' trust."   The FTC is committed to enforcing COPAA, reflecting Congress's intent to ensure that parents, rather than corporations like Disney, make decisions regarding the collection and use of their children's personal information.

## VII.   The FTC Action Does Not Remedy Plaintiff's Injury

59.     Although the FTC has taken enforcement action against Disney for its violations of COPPA, such regulatory action does not provide compensation or redress for the children and families directly harmed by Disney's misconduct. Minor Plaintiff's and

Class members' personal information was unlawfully collected and monetized without parental consent. These children suffered concrete and particularized injuries – namely, the loss of statutory privacy protections, exposure to surveillance and targeted advertisement, and the exploitation of their online behavior for corporate profit.

60.     Disney's failure to accurately designate child-directed videos as "made for kids" results in YouTube collecting personal information and placing targeted advertisements on child-directed videos on Disney's behalf. In addition to targeted advertising, when videos are not properly marked as "made for kids," other features that YouTube routinely disables on "made for kids" videos are available, including the ability to save videos and the ability to comment on videos. YouTube disables features on "made for kids" videos and channels in part because they would rely on the collection of user data to work properly.

61.     Minor Plaintiff and Class members were harmed when Disney enabled YouTube to collect their personal information. Reasonable guardians, including the guardian of the Minor Plaintiff, would not have allowed their children to access Disney channels on YouTube had they been aware of the extent to which children's privacy would be violated as a result.

62.     In today's data-driven landscape, the personal information of children has become an increasingly valuable commodity. Even at a young age, children leave behind distinct digital footprints—shaped by their online activities, device usage, preferences, and interactions. These insights are highly sought after by advertisers, as persistent identifiers allow for the tracking of children's behavior across various platforms. This enables the creation of intricate profiles used for precise targeting, shaping future consumer decisions, and cultivating brand loyalty. Children, therefore, represent a uniquely profitable yet vulnerable demographic, one that is highly susceptible to such data-driven practices.

63.     Unlike adults, children lack the capacity to understand the full scope of data collection or the implications of targeted advertising. Moreover, their personal information is often gathered without meaningful consent or awareness. The enactment of COPPA was

precisely to address these concerns, offering legal protections for children's privacy. When corporations like Disney overlook these safeguards, they do not simply breach the law—they exploit children's identities and attention for profit, undermining privacy protections and eroding public trust in the process.

64.    Indeed, there is a market for data like the data collected on the YouTube platform when the "not for kids" notation is selected by Disney. Plaintiff and Class members suffered pecuniary losses when their data was collected and shared with third parties in part because of the value of the data itself. Without the freedom to control what becomes of their data, children are unable to maintain the value of their personal data, which will remain with them for the rest of their lives.

65.    The value of children's personal and health information is axiomatic. For example, when cybercriminals steal such information, like the information Disney enabled to be collected through YouTube, the criminals face huge fines and lengthy prison sentences. Organizations across every sector use and monetize consumer data to increase profits.

66.    And the value of such information as a commodity is measurable. In monetary terms, academic research from institutions such as MIT and Carnegie Mellon has estimated that individual user data can be worth $240 or more per year to advertisers, with children's data commanding a premium due to its potential for early brand capture and influence.[1]

67.    There is also a market for data in which consumers can participate. Personal information has been recognized by courts as extremely valuable. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 462 (D. Md. 2020) ("Neither should the Court ignore what common sense compels it to acknowledge—the value that personal identifying information has in our increasingly digital economy. Many

---

[1] Acquisti, Allesandro et al., The Economics of Privacy, 54 J. Econ. Lit. 442, 444 (2016); see also Egelman, Serge et al., *What's the Value of Your Data?* (Carnegie Mellon CyLab 2020), https://www.cylab.cmu.edu/news/2020/20/whats-the-value-of-your-data.html.

companies, like Marriott, collect personal information. Consumers too recognize the value of their personal information and offer it in exchange for goods and services."). Google has recognized the value of user data and even instituted a pilot program to pay users $3 per week to allow Google to track them online.[2]

68.     Several companies have products through which they pay consumers for a license to collect or track their data. Nielsen, UpVoice, HoneyGain, and SavvyConnect are all companies that pay for browsing historical information. Facebook also has paid users for their digital information, including browsing history. Until 2019, Facebook ran a "Facebook Research" app through which it paid $20 a month for a license to collect browsing history information and other communications from consumers between the ages 13 and 35.

69.     Through its conduct and practices, Disney has unlawfully exploited the personal information of Plaintiff and Class members without their permission and without compensating them for the use of their assets.

70.     Plaintiff and Class members, through their guardians, had a reasonable expectation of privacy while engaging with Disney's YouTube channels because of societal norms as well as the implementation of laws such as COPPA, which were designed to protect children's privacy.

71.     Users young and old highly value their privacy when online—privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.  For example, *Consumer*

---

[2] *See* Josh Sidorowicz, *Yes, Google will pay you to track what you do on your phone*, WTSP Tampa Bay 10 (Apr. 11, 2024), https://www.wtsp.com/article/news/verify/google-tracking-study-payment-verify/67-1cc2e9a3-f51b-489b-aef8-1477201c0c11.

*Reports* notes that 92% of Americans believe that internet companies and websites should be required to obtain affirmative consent before selling or sharing their data.[3]

## CLASS ACTION ALLEGATIONS

72.     Pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), Plaintiff seeks certification of the following nationwide Class (the "Class" or the "Nationwide Class"):

> **All natural persons in the United States who, at any time during the applicable statutory period, were under 13 years old and watched child-directed content that was uploaded by Disney on YouTube and not marked as "made for kids."**

73.     Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court Staff; and (2) Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants, or their parents, have a controlling interest, and their current or former officers and directors.

74.     Plaintiff reserves the right to amend or modify the class definitions after having had an opportunity to conduct discovery.

75.     **Numerosity**: While the precise number of Class members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable, as the proposed Class appears to include over one million members who are geographically dispersed.

76.     **Typicality**: Plaintiff's claims are typical of Class members' claims. Plaintiff

---

[3] Katie McInnis, *The Evolution of Consumer Attitudes Toward Online Tracking, 1995-2019,* Consumer Reports (May, 2020) at 36, https://innovation.consumerreports.org/The-Evolution-of-Consumer-Attitudes-Toward-Online-Tracking_5.20.20_FINAL.pdf#:~:text=Following%20this%20reversal%2C%20a%20C onsumer%20Reports%20survey,said%20that%20internet%20companies%20and%20w ebsites%20should.

and all Class members were injured through Defendants' uniform misconduct, and Plaintiff's claims are identical to the claims of the Class members they seek to represent. Accordingly, Plaintiff's claims are typical of Class members' claims.

77.    **Adequacy**: Plaintiff's interests are aligned with the Class Plaintiff seeks to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously. The Class's interests are well-represented by Plaintiff and undersigned counsel.

78.    **Superiority**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class member's claims. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class members individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

79.    **Commonality and Predominance:** The following questions common to all Class members predominate over any potential questions affecting individual Class members:

      a.    Whether Disney gathered the personal identifying information of Class members;

      b.    Whether Disney obtained verifiable parental consent before collecting the personal identifying information of Class members;

      c.    Whether Disney violated Plaintiff's and Class members right to privacy;

d.   Whether Plaintiff and Class members are entitled to relief, including restitution and injunctive relief; and

e.   Whether Plaintiff and Class members are entitled to damages or other monetary relief, and if so, in what amount.

80.   **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

81.   Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

82.   Finally, all members of the proposed Class are readily ascertainable. Defendants have access to information regarding the individuals who accessed their content. Using this information, Class members can be identified and their contact information ascertained for the purpose of providing notice to the Class.

## FIRST CLAIM FOR RELIEF
### Intrusion On Seclusion

83.   Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

84.   Plaintiff's and Class members' private affairs, concerns, and seclusion include their interest in their personal information.

85.   Plaintiff's and Class members' private affairs, concerns, and seclusion include their interest in their personal information, which includes data points concerning their location and online activity.

86.   Plaintiff's and Class members' private affairs, concerns, and seclusion include their interest in their personal information, which includes data points concerning their identity, location and online activity while using internet-connected devices.

87.   The content on Defendants' YouTube channels was clearly and unmistakably

directed to children, and Defendants were well-aware of the demographic that made up the vast majority of their audience. Yet, Defendants failed to designate this content as "made for kids," thereby enabling the platform and its ad partners to secretly track, profile, and target young viewers for behavioral advertising – a practice that is both unlawful under COPPA and highly offensive to a reasonable person.

88.    As a result of the uniform conduct and practices alleged herein, Defendants intentionally intruded upon the seclusion of Plaintiff's and Class members' seclusion by improperly collecting and using their personal information without obtaining consent.

89.    As a result of the uniform conduct and practices alleged herein, Defendants intentionally intruded upon the seclusion of Plaintiff's and Class members' seclusion by improperly collecting and using their personal information without obtaining consent.

90.    Defendants intentionally intruded upon the seclusion of the Plaintiff's and Class members' seclusion by improperly collecting and using their personal information, without providing direct notice to their parents and obtaining verifiable parental consent, as required by COPPA.

91.    As a result of the uniform conduct and practices alleged herein, Defendants' intrusion upon seclusion of the Plaintiff and Class members was substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by consumer surveys, academic studies detailing the harms of tracking children online, centuries of common law, scholarly literature on consumers' reasonable expectations, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and the fines sought by the FTC predicated on Defendants' conduct.

92.    As a result of the uniform conduct and practices alleged herein, Defendants' intrusion upon seclusion of the Plaintiff and Class members was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms, because Defendants used the personal information for an improper purpose, including by targeting

the Plaintiff and members of the Class with advertising, in violation of COPPA.

93.    As minor children, Plaintiff and members of the Class lacked the ability to form expectations about reasonable privacy; their parents and guardians, however, had a reasonable expectation of privacy in their children's online viewing activities, particularly given their children's ages and the nature of the content involved.

94.    Neither Plaintiff nor Class members, nor their parents and/or guardians, consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

95.    Neither Plaintiff nor Class members, nor their parents and/or guardians, consented to the collection and use of their personal information.

96.    Plaintiff and members of the Class suffered actual and concrete injury as a result of Defendants' intrusion upon their seclusion.

97.    On behalf of themselves and Class members, Plaintiff seeks appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits realized by Defendants as a result of their intrusion upon seclusion of Plaintiff's and members of the Class's private affairs, concerns, and seclusion.

## SECOND CLAIM FOR RELIEF
### Invasion of Privacy

98.    Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

99.    The private affairs, concerns, and seclusion of Plaintiff and Class members include their interest in their personal information as defined by COPPA, which includes data points concerning their location and online activity while using internet-connected devices.

100.    The private affairs of Plaintiff and Class members include their behavior on their mobile devices and computers, as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by Defendants.

101.    The parents and guardians of Plaintiff and Class members have reasonable

expectations of privacy in their children's mobile devices and their online behavior and activities generally, which constitute private matters.

102. As a result of the conduct and practices alleged herein, Defendants intentionally intruded upon the private affairs and matters of Plaintiff and Class members, including by electronic means while they were in private and in their personal quarters, by improperly accessing their personal information and using it for improper purposes, including by targeting them with advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of Plaintiff and Class members who reside with advertisements, as detailed herein.

103. Defendants' intrusions upon the private affairs, conversations, and matters of Plaintiff and Class members were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, the fines imposed on Defendants by the FTC, and the reforms required by the Order entered by the Court.

104. As minor children, Plaintiff and Class members lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions; their parents and guardians, however, had a reasonable expectation of privacy in their children's online viewing activities, particularly given their children's ages and the nature of the content involved.

105. Neither Plaintiff and the Class members nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

106. Class members suffered actual and concrete injury as a result of Defendants' intrusions upon the private affairs, conversations, and matters of and Plaintiff and the Class members.

CLASS ACTION COMPLAINT

107.  Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon the private affairs, concerns, and seclusion of Plaintiff.

108.  Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of Defendants' intrusions upon the private affairs, concerns, and seclusion of Plaintiff and Class members.

### THIRD CLAIM FOR RELIEF
**Trespass to Chattels**

109.  Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

110.  Plaintiff and Class members have a property interest in their personal information, which is an asset with value that Plaintiff and Class members possess.

111.  As a result of the uniform conduct and practices alleged herein, Defendants unlawfully took possession of and commercially exploited Plaintiff and Class members, including by using their personal information for purposes of targeted behavioral advertising, without their consent or permission, and without compensating them for the use of their assets.

112.  By intentionally choosing to not designate clearly child-directed content as "made for kids" on YouTube, Defendants enabled and benefited from the surreptitious placement of tracking tools on children's devices through third-party advertising systems. This conduct was done without notice, authorization, or valid parental consent, and was specifically intended to harvest behavioral data from children for advertising and profit.

113.   As a result of the conduct and practices alleged herein, including the unauthorized digital intrusion, Defendants' conduct caused harm, in that it damaged, diminished, impaired, interfered with, and/or destroyed the value of the personal information in which Plaintiff and Class members have a possessory interest.

114.   Plaintiff seeks appropriate relief for that injury on behalf of Class members, including but not limited to (i) damages that will reasonably compensate Class members for the harm to their interests in their personal information, and (ii) disgorgement of profits made by Defendants as a result of Defendants' intentional interference with the possession of their personal information.

### FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**

115.   Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

116.   Defendants received a benefit from their collection and use of Plaintiff's and Class members' data and personal information, including the ability to deploy targeted advertising to minor children Plaintiff and Class members, in violation of state and federal law.

117.   Upon information and belief, Defendants' collection and use of Plaintiff's and Class members' Personal Information yielded significant monetary benefit to Defendants. Indeed, Defendants directly profited from its arrangement with YouTube through advertising revenue shared with YouTube and through enhanced audience insights used to further their commercial interests.

118.   Defendants enriched themselves through advertising targeted to Plaintiff and Class members, among various means. Defendants' enrichment came at the direct expense of Plaintiff and Class members, whose privacy was compromised and whose personal data was wrongfully used to generate corporate profit.

119.   Plaintiff and Class members were harmed by the benefit to Defendants, because their privacy was violated and their Personal Information collected in

contravention of law and social norms in a way that would be unconscionable to a reasonable person.

120.    Defendants should be compelled to disgorge the profits they accumulated as a result of their unjust and unlawful collection and use of Plaintiff's and Class members' personal information.

121.    Plaintiff seeks restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendants as a result of their unlawful conduct.

## FIFTH CLAIM FOR RELIEF
### Negligence and Negligence *per se*

122.    Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

123.    Disney owed a duty of care to children who viewed its content to safeguard their privacy and personal information.

124.    Disney was required to comply with applicable privacy laws designed to protect children, including COPPA, and to take reasonable steps to protect children's personal information from unlawful collection and use.

125.    Disney owed a higher duty of care to children than to an ordinary consumer because of children's lack of capacity to appreciate and avoid risks.

126.    Disney knew or should have known that its content was viewed primarily by children under the age of 13, and that failure to properly designate such content as "made for kids" would result in the collection of young viewers' personal information, including persistent identifiers such as cookies and IP addresses, without verifiable parental consent.

127.    Disney negligently failed to appropriately mark child-directed videos and therefore failed to prevent the collection and use of children's personal data for targeted advertising purposes.

128.    Disney failed to implement or maintain policies, procedures, or oversight mechanisms as needed to comply with COPPA.

129.    Disney's failure to act with reasonable care directly enabled the unlawful

CLASS ACTION COMPLAINT

harvesting of children's personal information, exposing millions of children to commercial exploitation and violating their statutory right to privacy.

130.    Defendants also had independent duties under state and federal laws that required Defendants to ensure that personal information of children was not collected without parental consent.

131.    Defendants violated COPPA by failing to designate child-directed videos as "made for children," resulting in the unauthorized collection and use of their personal information. Defendants' conduct was particularly unreasonable given the notice that was given to Disney by YouTube that Disney was not in compliance with COPPA as of the summer of 2020.

132.    Defendants' violation of COPPA constitutes negligence *per se.*

133.    As a direct and proximate result of Disney's negligent actions and/or Disney's violation of COPPA, Plaintiff and Class members suffered injury, including the collection, exposure, and exploitation of their intimate personal information.

134.    Plaintiff seeks restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendants as a result of their unlawful conduct.

**SIXTH CLAIM FOR RELIEF**
**Violations of the California Unfair Competition Law,**
**Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL")**

135.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

136.    Defendants' conduct constitutes unfair, illegal, and fraudulent business practices within the meaning of the California Business & Professions Code § 17200, *et seq.* (the "UCL").

137.    Defendants' conduct violated certain laws as alleged herein, including COPPA. By engaging in the said conduct in the course of doing business within California, Defendants engaged in unlawful business practices in violation of the UCL as to Plaintiff and all Class Members.

CLASS ACTION COMPLAINT

138.    By engaging in the above-described conduct in the course of doing business, Defendants engaged in unfair business practices in violation of the UCL because the harm to Plaintiff and Class Members outweighed any utility that Defendants' conduct may have produced.

139.    Defendants' failure to designate their content on YouTube as "made for kids" constitutes a fraudulent act or practice in violation of the UCL. Defendants' failure to adequately protect Plaintiff's and Class members' Private Information, despite assurances they would do so and that Defendants met industry standards for data security, also constitutes a fraudulent act or practice in violation of the UCL.

140.    Plaintiff and Class Members suffered injury in fact as a result of Defendants' conduct.

141.    Individually and on behalf of the Class, Plaintiff seeks injunctive relief, restitution, and all other damages available under this cause of action.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, on behalf of themselves and the Class, respectfully requests that this Court:

A.    Determine that the claims alleged herein may maintained as a class action under Federal Rule of Civil Procedure 23, and enter an order certifying the Class defined above and appointing Plaintiff as Class representative;

B.    Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

C.    Award pre-judgment and post-judgment interest as provided by law;

D.    To the extent an adequate remedy at law does not exist, grant appropriate equitable relief to which Plaintiff and Class members are entitled.

E.    Award reasonable attorneys' fees and costs as permitted by law; and

F.    Grant such other and further relief as the Court deems appropriate.

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

Dated: September 8, 2025

*/s/ Tina Wolfson*
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Robert Ahdoot (SBN 172098)
*rahdoot@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310.474.9111
Facsimile:   310.474.8585

Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone:  917.336.0171
Facsimile:   917.336.0177

*Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT